Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. GAB Business Services, Inc., was the compensation carrier on the risk.
4. At the time of the execution of the Pre-trial Agreement, the parties stipulated and agreed that plaintiff continued to work at the location of defendant-employer in Laurinburg, North Carolina.
5. Plaintiff's average weekly wage may be determined from an Industrial Commission Form 22 Wage Chart dated 5 November 1993. Plaintiff, without the aid of the Industrial Commission Form 22 contends that her average weekly wage is approximately $400.00.
6. Three pages of medical records concerning plaintiff from Dr. Brenner marked as Stipulated Document 2, is stipulated into evidence.
7. A letter from Mark E. Brenner, M.D., to counsel for the plaintiff marked as Stipulated Document 2, is stipulated into evidence.
8. A letter from Allison Wicker, Claims Adjuster, to plaintiff dated 4 November 1992 marked as Stipulated Document 3, is stipulated into evidence.
* * * * * * * * * * * * * * * * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing of the above-captioned matter, plaintiff was a 50 year old woman with an eighth grade education.
2. Plaintiff has been employed with defendant-employer as a "cap cutter." Prior to working as a "cap cutter", plaintiff was employed as a "rubber handler", a job which she began in 1979.
3. Plaintiff's job as a "rubber handler" included cutting strips of rubber which were transported on a conveyor belt, and then manually placing the rubber strips into a basket. Once the process was completed, it was repeated. Plaintiff's job as a "rubber handler" included cutting twenty to thirty batches of rubber strips every day. The batches of rubber weighed 140 to 149 pounds per batch. The strips or pieces of rubber were used to make rubber grips which go on the end of golf clubs.
4. Plaintiff's duties as a "rubber handler" also included pulling rubber strips through a machine, and included cutting rubber strips with scissors, approximately every thirty minutes. Although plaintiff is left-handed dominant, plaintiff used both hands to perform her task.
5. As a result of plaintiff's repetitive employment with defendant-employer, plaintiff sustained bilateral carpal tunnel syndrome.
6. Plaintiff's employment with defendant-employer placed plaintiff at an increased risk of developing bilateral carpal tunnel syndrome than members of the general public not so employed.
7. As a result of the problems which plaintiff experienced as a result of her development of bilateral carpal tunnel syndrome, which resulted from her employment with defendant-employer, plaintiff was first seen and treated by Dr. Mark Brenner, an orthopedic surgeon, in September of 1992.
8. At the time of the hearing of the above-captioned matter, plaintiff continued to be employed by defendant-employer, but had changed jobs. Plaintiff was moved from the rubber handler machine to one which manufactures the "cap" of the golf club.
9. Plaintiff's average weekly wage with defendant-employer was $450.24, yielding a compensation rate of $300.18.
10. Subsequently, following the hearing of this matter, as a result of her contraction of bilateral carpal tunnel syndrome, which resulted from her employment with defendant-employer, plaintiff underwent carpal tunnel release surgery of her left wrist and hand on 6 December 1993. As a result, plaintiff was incapable of earning wages with defendant-employer or in any other employment for an unspecified period of time, beginning 6 December 1993.
11. Currently, plaintiff needs further professional evaluation for determination of whether additional treatment or surgical intervention is warranted as a result of plaintiff's contraction of bilateral carpal tunnel syndrome as a result of her employment with defendant-employer. Plaintiff has been evaluated and treated by Dr. Mark Brenner, an orthopedic surgeon, who is in the best position to evaluate further plaintiff's condition and to perform what, if any, further surgery plaintiff may need in order to effect a cure, give relief or lessen plaintiff's period of disability, as a result of plaintiff's contraction of bilateral carpal tunnel syndrome as a result of plaintiff's employment with defendant-employer.
* * * * * * * * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff's bilateral carpal tunnel syndrome is due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. § 97-53 (13).
2. As a result of plaintiff's contraction of bilateral carpal tunnel syndrome, plaintiff is entitled to temporary total disability compensation at the weekly rate of $300.18, beginning 6 December 1993 and continuing until plaintiff returns to work or defendant obtains permission from the Industrial Commission to cease payment of temporary total disability compensation, whichever first occurs. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her contraction of bilateral carpal tunnel syndrome which resulted from her employment with defendant-employer, including further evaluations and treatments from Dr. Mark Brenner, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $300.18 per week beginning 6 December 1993 and continuing until plaintiff returns to work or defendant obtains permission from the Industrial Commission to cease payment of temporary total disability compensation, whichever first occurs. Amounts which have accrued shall be paid in a lump sum, subject to the attorney fee approved in Paragraph 3.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her contraction of bilateral carpal tunnel syndrome, including further evaluations and treatments from Dr. Mark Brenner, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, when bills for same shall have been submitted through defendant to the Industrial Commission, and are approved by the Industrial Commission.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff under Paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the temporary total disability compensation due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER
BSB:md